25CA2321 Peo in Interest of ZOKS 07-16-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA2321
City and County of Denver Juvenile Court No. 24JV30154
Honorable Laurie Clark, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of Z.O.K.S., a Child,

and Concerning A.W.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GROVE
Martinez* and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

---

Miko Brown, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

A.W., Pro Se

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    In this dependency and neglect proceeding, A.W. (father) appeals the juvenile court's order revoking his deferred adjudication and adjudicating Z.O.K.S. (the child) dependent or neglected. He also appeals the district court's order allocating parental rights to the child's maternal grandmother. We affirm.

## I.    Background

¶ 2    Denver Human Services (the Department) filed a petition in dependency or neglect based on mother's substance use. Initially, mother was the only respondent. Father's identity was unknown at the time and the Department placed the then two-and-a-half-year-old child with maternal grandmother. The Department later filed an amended petition to include father. Father admitted paternity and the court placed the child with him.

¶ 3    Four months later, father agreed to a deferred adjudication. The terms of the deferred adjudication required father to (1) follow all court orders; (2) not leave Colorado with the child without approval; (3) "maintain stable housing, adequate for himself and his child, which is maintained in a safe and cleanly manner;" (4) demonstrate an understanding of the physical, emotional, mental health, medical, and educational needs of the child; (5) meet

1

with the caseworker to develop a plan for co-parenting; (6) comply with family time if the child was placed out of father's home; (7) have the child "in the custody of a parent, absent a safety plan, on the date eight months following the adoption of the deferred agreement;" and (8) cooperate with the Department and the guardian ad litem (GAL).

¶ 4 Nearly six months after the initial deferral, the juvenile court continued the deferred adjudication for an additional six months. Father, who was represented by counsel at the hearing, did not object. Shortly before the deferral period expired, mother filed a motion to remove the child from father. After holding a hearing on the motion, the court removed the child from father's custody and placed him with grandmother.

¶ 5 The Department moved to revoke the deferred adjudication on the one-year anniversary of its entry. Before the revocation hearing, father's counsel withdrew and father proceeded pro se for the remainder of the case. At the conclusion of the revocation hearing, the juvenile court found that father had not complied with the terms of the deferred adjudication and adjudicated the child dependent and neglected. Less than a month later, the court held a

hearing on the GAL's motion to allocate parental responsibilities and allocated parental responsibilities to grandmother.

## II.    Preliminary Matters

¶ 6    Father represents himself on appeal, and we, therefore, liberally construe his arguments.  *See Adams v. Sagee*, 2017 COA 133, ¶ 10.  Nonetheless, "pro se parties must comply with procedural rules to the same extent as parties represented by attorneys."  *Id.*  Under C.A.R. 28, an appellant's opening brief must include, among other things, a statement on "the applicable standard of review with citation to authority;" a statement on "whether the issue was preserved, and if preserved, the precise location in the record where the issue was raised and where the court ruled;" and "a clear and concise discussion of the grounds upon which the party relies in seeking a reversal . . ., with citations to the authorities and parts of the record on which the appellant relies."  C.A.R. 28(a)(7)(A)-(B).

¶ 7    Father's opening brief does not comply with C.A.R. 28.  These requirements are necessary to facilitate our appellate review, and father's arguments are difficult to discern.  *See Cikraji v. Snowberger*, 2015 COA 66, ¶ 10.  We exercise our discretion to

3

review father's contentions, but we are limited by the information father provided in his brief. *See id.* We will not develop his arguments or search the record for the relevant facts that may support his claims. *See id.*; *see also Castillo v. Koppes-Conway*, 148 P.3d 289, 291 (Colo. App. 2006) (noting that it is not the appellate court's task to locate and synthesize the relevant facts, arguments, and legal authority).

### III. Deferred Adjudication

¶ 8 Father argues that the juvenile court erred by revoking his deferred adjudication. We reject this contention.

### A. Legal Authority and Standard of Review

¶ 9 In dependency and neglect proceedings, an adjudication represents the juvenile court's determination that state intervention is necessary to protect a child and that the family requires rehabilitative services to safely care for the child. *People in Interest of J.G.*, 2016 CO 39, ¶ 16. Typically, before adjudicating a child dependent or neglected, the court must hold a hearing at which the department is required to prove the allegations in the petition by a preponderance of the evidence. *Id.*; *see* § 19-3-505, C.R.S. 2025. Alternatively, the court may accept a parent's admission at an

adjudicatory hearing. *People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 32. The "court's acceptance of [a parent's] admission establishe[s] the status of the children as dependent or neglected." *Id.*

¶ 10 When a parent admits that a child is dependent or neglected, the parent may defer adjudication by continuing the adjudicatory hearing. Section 19-3-505(5) prescribes the process for doing so. Specifically, when a parent admits that the child is dependent or neglected, a deferred adjudication allows a juvenile court, with all parties' consent, to continue the adjudicatory hearing for six months and to defer entry of judgment. § 19-3-505(5)(a)-(b), C.R.S. 2025. Following the initial six-month period, the juvenile court may continue the hearing for another six months, after which the court must dismiss or sustain the petition. § 19-3-505(5)(b).

¶ 11 Whether a child is dependent or neglected presents a mixed question of fact and law because it requires the application of the statutory criteria to evidentiary facts. *People in Interest of E.R.*, 2018 COA 58, ¶ 5. We review the court's factual findings for clear error but review de novo its legal conclusions based on those facts. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.

## B. Statutory Violations

¶ 12 First, father contends that the juvenile court lacked statutory authority to revoke the deferred adjudication because it never entered a treatment plan. We disagree.

¶ 13 The deferred adjudication agreement contained detailed terms and conditions, which served as the functional equivalent to a treatment plan; indeed, after the juvenile court revoked father's deferred adjudication, the court adopted its terms as the treatment plan. By signing the deferred adjudication agreement, father agreed to "fulfill[]" the terms of the agreement. Thus, contrary to father's argument, "there were [] enforceable terms to violate." And neither section 19-3-505(5) nor *People in Interest of A.M.D.*, 648 P.2d 625, 632 (Colo. 1982), mandates a treatment plan, as father argues.

¶ 14 Father also argues that the court violated section 19-3-505(5) because it continued the deferral period without making oral findings, without advising father, and without obtaining father's consent. But the authority father cites in support of his arguments relates only to the initial entry of the deferred adjudication. *See People in Interest of T.M.*, 2022 COA 88M, ¶ 17. Father does not cite, and we are not aware of, any Colorado authority that requires

6

new findings, a new advisement, or renewed consent for the court to exercise its statutory authority to extend the deferral period for an additional six months. Section 19-3-505(5)(b) requires only "review by the court" to "continue the case for an additional period not to exceed six months;" the statute requires no additional findings, advisement, or consent. At the time the court entered the deferred adjudication, it advised father that after the initial six-month deferral period, the court could defer the adjudication for an additional six months.

¶ 15    To the extent father argues that the court "lacked jurisdiction" because of its purported failure to comply with statutory requirements, even if there was such a failure, it does not divest the court of subject matter jurisdiction. *See People in Interest of N.D.V.*, 224 P.3d 410, 414 (Colo. App. 2009) (failure to follow the statute amounts to an erroneous decision not affecting jurisdiction). A court that has already acquired subject matter jurisdiction — as was the case here when the court accepted father's admission that the child was dependent and neglected — is not divested of that jurisdiction by a later failure to follow statutory requirements. *See J.W.*, ¶ 24; *N.D.V.*, 224 P.3d at 416.

## C. Due Process Violations

¶ 16 Next, father claims that the juvenile court violated his right to due process when it admitted "fault-based and other-acts evidence" and by failing to timely rule on his motion in limine related to this purportedly inadmissible evidence. Specifically, father argues that this evidence was "outside the scope of his admission" and that the Department could not rely on evidence not pled in its petition for dependency or neglect. We disagree.

¶ 17 We review the juvenile court's evidentiary rulings for an abuse of discretion. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 32. The court abuses its discretion when it misapplies the law or when its decision is manifestly arbitrary, unreasonable, or unfair. *Id.* We review procedural due process claims de novo. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 25.

¶ 18 According to the deferred adjudication agreement, which father signed, he was advised that as part of the entering into the agreement, he "waived his right to a jury trial on the issue of whether the child is dependent or neglected." The court advised father that he was "entitled to an evidentiary hearing on the matter, but that the issue to be decided at such evidentiary hearing [was]

8

whether or not [father] ha[d] sufficiently complied with the terms of this deferred adjudication." If he had not complied with the terms of the deferred adjudication, his admission would enter and the court would adjudicate the child dependent or neglected. The record reveals that at the hearing, the Department presented evidence regarding father's noncompliance with the terms of the deferred adjudication consistent with the issue then properly before the court.

¶ 19  Even so, at the beginning of the revocation hearing, the court addressed father's motion in limine, noted his objections, and encouraged him to object if he thought "that something [was] happening that [was] objectionable." Father does not cite, and we are aware of, any authority that holds a juvenile court abuses its discretion when it defers ruling on a motion in limine to the hearing at which the evidence actually is offered.

¶ 20  Father generally argues that the court admitted evidence "regarding domestic violence and parental unfitness" but does not specifically identify testimony or evidence that was erroneously admitted over his objection. *Cikraji*, ¶ 10 (an appellate court is not

required to "comb the record" for facts supporting a party's argument that are not cited in the briefs).

¶ 21 Father has not identified a protected liberty interest. *See R.J.B.*, ¶ 26 ("To establish a violation of due process, one must first establish a constitutionally protected liberty interest that warrants due process protections.") Father received notice of the hearing when the Department filed its motion to revoke the deferred adjudication, had previously waived his right to counsel, and participated in the hearing. *See id.* at ¶ 27 (due process requires the state to provide fundamentally fair procedures which include notice of the hearing, advice of counsel, and the opportunity to be heard and defend).

## D.    Conclusion

¶ 22 The record supports the juvenile court's finding that father failed to comply with the conditions of his deferred adjudication. Thus, we conclude that the court did not err by revoking the deferred adjudication and adjudicating the child dependent and neglected.

## IV.  Remaining Contentions

¶ 23    Father claims that the juvenile court erred in denying his C.R.C.P. 60(b) motion because "the adjudication was void due to jurisdictional defects, statutory noncompliance, and violations of due process."  But beyond the arguments we have already addressed and rejected above, father does not further develop any arguments related to his Rule 60(b) motion.  *See R.J.B.*, ¶ 35 (we will not consider a claim which is "merely a bald assertion without argument or development").

¶ 24    Similarly, father does not develop his arguments that we should reverse the judgment allocating parental responsibilities; that the court made no permanency findings; that the court did not address reasonable efforts; and that the removal of the child was unlawful.  Thus, we will not consider them.  *See id.*

¶ 25    Finally, father asks us to apply the cumulative error doctrine to reverse the judgment.  Divisions of this court, however, have declined to extend the cumulative error doctrine to civil cases, such as those in dependency and neglect. *See Acierno v. Garyfallou*, 2016 COA 91, ¶ 66; *Neher v. Neher*, 2015 COA 103, ¶ 66.  Because we

11

agree with those other divisions, we decline to address the claim of cumulative error.

## V.    Disposition

¶ 26    The judgment is affirmed.

JUSTICE MARTINEZ and JUDGE BERGER concur.